UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re                                                        Hearing date: June 3, 1999
                                                             Time: 2:00 p.m.

MADISON PLAZA ASSOCIATES and
MADISON PLAZA LAND LIMITED             Chapter 11
PARTNERSHIP                                        Case Nos. 96B 43547 (CB)
                                                                       96B 43548 (CB)

                          Debtors.
-----------------------------------------------------------------x
CREDIT SUISSE FIRST BOSTON
MORTGAGE CAPITAL, LLC and
PACIFIC LIFE INSURANCE COMPANY,

                          Plaintiffs,

            - against -                                    Adv. Proc. No. 98-9339A

LLIW, L.L.C., RATL L.L.C. and HARRY
MACKLOWE,

                          Defendants.
-----------------------------------------------------------------x
MADISON PLAZA ASSOCIATES, L.P.

                          Plaintiffs,

            - against -                                    Adv. Proc. No. 98-9416A

CREDIT SUISSE FIRST BOSTON
MORTGAGE CAPITAL, LLC and
PACIFIC LIFE INSURANCE COMPANY,

                          Defendants.
-----------------------------------------------------------------x

**REPLY MEMORANDUM IN FURTHER
SUPPORT OF MOTION TO DISQUALIFY**

**Preliminary Statement**

310 Realty Partners L.P. ("310 Realty"), CRC Realty Capital Corp., its general partner ("CRC"), Madison Avenue Land L.P. ("Madison Avenue Land"), Plaza Capital Partners, Inc., its general partner ("Plaza Capital") and Edward M. Strasser ("Strasser") (collectively, "Movants") respectfully submit this reply memorandum in further support of their application for an order of this Court disqualifying Proskauer Rose LLP ("Proskauer"), counsel to Credit Suisse First Boston Mortgage Capital LLC and Pacific Life Insurance Company (collectively, "First Boston") in these proceedings.

Proskauer, faced with a compelling Application warranting its disqualification in this matter, attempts in its Objection to re-write history and to minimize its long-standing relationship with Movants. Movants are not surprised by this tactic; although Proskauer admittedly has represented Strasser and related entities for over thirty years, its new client, First Boston, clearly brings with it promises of plentiful fees in this and possibly other matters. Proskauer forgets that the duty of undivided loyalty prevents it from dropping its client "like a hot potato, especially if it is in order to keep happy a far more lucrative client." *Chemical Bank v. Affiliated FM Ins. Co.*, 1994 WL 141951 at *9 (S.D.N.Y. 1994) (citation omitted). Fortunately, the ethical precepts underlying the disqualification case law do not yield to financial prerogatives. This case law mandates that Proskauer step aside.

Movants' Application demonstrated that the requirements for disqualification have been satisfied here, to wit: (1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney

whose disqualification is sought had access to, or was likely to have access to, relevant privileged information in the course of his prior representation of the client. Evans v. Artek Systems Corp., 715 F.2d 788, 791 (2d Cir. 1983) (citations omitted).

As to the first factor, Proskauer cannot seriously dispute (and indeed *admits*) the previous representation of Movants and related entities. Although Proskauer now seeks to downplay the relationship, in fact Proskauer's representation was neither fleeting nor sporadic. For *over thirty years*, Proskauer has been the equivalent of Movants' general counsel, providing a wide range of legal advice on many matters. Even Proskauer begrudgingly admits to so much. *See, e.g.,* Affirmation of Ronald R. Papa in Opposition, dated March 22, 1999 at ¶¶ 7[1] and ¶ 11[2]. Proskauer represented Movants in negotiating and structuring the very mortgage documents purchased by Macklowe (with First Boston backing him as a co-venturer) and pursuant to which First Boston seeks relief in this proceeding. And although Proskauer asks this Court to elevate form over substance by disregarding its continued representation of Strasser and his business interests after the commencement of the 680 Fifth Avenue bankruptcy proceeding in 1992, in point of fact Proskauer continued to represent Strasser and interact on almost a daily basis with

---

[1] *See* Papa Aff. at ¶ 7 ("[t]he matters of representation included: negotiation of leases of the property owned by [Madison] Plaza; bringing and defending litigation (including a lawsuit brought by the limited partners against the limited partnership) and advice on other disputes relating to the property; refinancing of mortgages; preparation of audit letters; an offer by the general partner to acquire the limited partnership interests; and other general corporate advice").

[2] *See* Papa Aff. at ¶ 11 ("I understand Proskauer's representation of Edward Strasser began approximately 30 years ago. Proskauer represented Strasser in connection with various matters other than those concerning Plaza and Land. These included matters relating to other Prudential syndicated limited partnerships, of which Strasser gained control of the general partners during the same time period that Strasser gained control of the general partner of Plaza and Land").

Strasser throughout 680 Fifth Avenue proceeding.

The subject matters of Proskauer's former and current representation are not only "substantially related"; they are *identical*. Recognizing its predicament, Proskauer engages in the time-honored tradition of creating a strawman: the issue litigated here is Macklowe's default of the June Confirmation Order; Proskauer's previous representation of Movants included advice related to tax advice and tax recapture and other matters generally related to the structure of the 680 Fifth transaction; and such general advice is irrelevant to Macklowe's alleged default.

But, as Proskauer and its current client are well aware, the issue here extends far beyond whether Macklowe is in technical default of his obligations under the June Confirmation Order. The key issue (which by necessity must be addressed in this Court's assessment of the recently proposed settlement) is whether First Boston's purported remedies under the Confirmation Order (whether exercised through litigation or through a settlement) will unfairly alter the material terms and conditions of the June Confirmation Order which were designed to protect the Reorganized Debtors' Limited Partners. Recasting the issue in this light, it is plain that Proskauer's extensive advice and representation of Movants related to potential tax recapture (and other related issues) is both substantially related and identical to the issues which will be addressed by this Court in this proceeding. In fact, Proskauer represented Strasser-controlled entities in structuring and negotiating the very mortgage documents purchased by Macklowe (with First Boston backing him as co-venturer) and upon which First Boston now seeks to exercise its purported rights (Proskauer even issued the opinion letter to the partnership in connection with the deal). This was not a situation where an "innocent" lender seeks relief against a recalcitrant borrower based upon publicly-available information; First Boston obviously

sought out Proskauer to take advantage of the cost savings and the wealth of confidential information exchanged between Proskauer and Strasser through Proskauer's role as Movants' former counsel *on this very transaction*! The disqualification rules were created, in part, to avoid the obvious unfairness of affording an adverse party (such as First Boston) with the benefits of confidences and knowledge obtained by Proskauer in representing its former clients on the very same issues.

Proskauer has not rebutted the presumption in this Circuit (if it even is rebuttable) that it was privy to its former clients' confidences. Particularly in light of the almost daily interaction between Strasser and Proskauer attorneys, Movants take cold comfort in Proskauer's "reassurance" that "Proskauer's current representation of First Boston and Pacific Life in these proceedings has no relation to any secrets or confidences of Proskauer's former clients" (Objection at 17). Nevertheless, even Proskauer recognizes the need for discovery on this issue (Objection at 3). Movants are prepared to engage in expedited discovery on the issues raised in this motion (including, but not limited to, Proskauer's access to confidences and the scope and duration of Proskauer's representation of Movants and related entities) and to move forward with an evidentiary hearing on these issues.

For similar reasons, Proskauer's *current* representation of some of the Movants requires the firm's disqualification under the *per se* rule adopted in this Circuit. Again, Proskauer seeks to downplay the scope of such representation. But the key inquiry is not whether Proskauer today represents Movants, but instead whether the firm represented two clients with adverse interests at the time the conflict arose. Here, the conflict arose when Proskauer, on behalf of First Boston, stood before this Court in the Spring of 1998 and misrepresented its client First Boston's

intentions when the Court confirmed the plan (as evidenced by the "draft" pleadings submitted by Proskauer in connection with its motions against Macklowe). Even so, Proskauer did not cease representing Strasser on the Berley matter in April 1998 as it intimates by pointing to its own inactivity. The matter was simply "on hold" due to a strategic decision made by Proskauer and Strasser. This adverse representation requires Proskauer's disqualification under the *per se* rule.

## ARGUMENT

### I.

### Proskauer Must be Disqualified Under the Substantial Relationship Test

Proskauer ignores the settled precept that "any doubt [as to disqualification] is to be resolved in favor of disqualification," Hull v. Celanes Corp., 513 F.2d 568, 571 (2d Cir. 1975). Instead, Proskauer seeks to divert the Court from Movants' compelling case by accusing Movants of having filed its Application for "tactical reasons" (Objection at 10). Movants acknowledge the concern expressed by judges in this Circuit that motions to disqualify are often made for tactical reasons, and not due to any real concern as to a conflict of interest. But Movants submit that *none* of those cases involved a thirty-year attorney/client relationship and extensive advice and counseling to an individual and his entities on issues directly germane (indeed identical) to the issues implicated in the current representation. Although Movants in their Application expressed "deep regret and a sense of sadness" in having been compelled to make this motion (Application at 2), neither Proskauer nor the Court should underestimate Movants' feeling of violation inherent in Proskauer's shameful and arrogant effort to counsel its new client on the very issues for which

it previously represented Movants.

Movants have satisfied each of the three factors for disqualification. To the extent that additional information is required, the Court should (in accordance with Proskauer's suggestion) (*see* Objection at 3) allow the parties to engage in expedited discovery and conduct a hearing in connection with the within Application.[3]

### A. Proskauer Admits to its Previous Representation of Movants

Proskauer *admits* (as it must) in its Objection that it has represented Movant Strasser for thirty years (*see* Papa Aff. at ¶ 11) and that it has represented other "movant entities" from the late 1980's until the end of August 1994 (*see* Objection at 11). Movants submit that this admission is dispositive of an attorney/client relationship and, therefore, satisfies the first prong of the *Artek* test.

Nevertheless, despite continued counsel to Strasser on an almost daily basis

---

[3]  Although professing not to assert waiver/estoppel in response to the motion (Objection at 4, n. 1), Proskauer intimates that Movants should not have delayed in making this motion. Significantly, Proskauer does not assert (nor could it) that Movants have agreed to waive the Firm's conflict of interest. Moreover, as set forth in the Application, Movants had no reason to believe that a conflict existed in May 1998 when Proskauer, as First Boston's counsel, misrepresented its client's true intentions vis a vis the plan's protections to the Limited Partners. It was not until late 1998 that First Boston and Proskauer's true intentions were first revealed (in the guise of the motions filed against Macklowe). At that time, as suggested by the Court, Movants "stayed their hand" in deference to the pendency of mediation proceedings (from which Proskuaer, on behalf of First Boston, promptly sought to exclude Movants). In any event, as demonstrated by case law cited by Proskauer in its Objection (at p. 18), Proskauer's assertions related to waiver/estoppel are of no legal import on this motion. *See*, *e.g.*, *British Airways, PLC v. Port Authority of New York and New Jersey*, 862 F. Supp. 889, 900 (E.D.N.Y. 1994) (disqualifying counsel and rejecting assertions of waiver or laches).

subsequent to August 1994, Proskauer seeks to disavow any continuing attorney/client relationship with Movants after that date based on purported representations made to Judge Brozman in the 680 Fifth Avenue case that Proskauer would not represent Strasser personally or his related entities. By so doing, Proskauer seeks to salvage an argument that there can be no substantial relationship when comparing the pre-1995 representation with the current representation. Proskauer misses the mark.

Courts in this Circuit have rejected parties' efforts to rely on "labels" or other similar indicia (such as the identity of the party paying the attorney's fee) to identify whether an attorney/client relationship has been formed. This is often the case where a law firm serves as "general counsel" to an entity or entities, *see Thomson U.S. Inc. v. Gosnell*, 181 A.D.2d 558, 581 N.Y.S.2d 764 (1st Dep't 1992); where ownership of an entity changes through a merger or acquisition, *see Tekni-Plex, Inc. v. Meyner and Landis*, 89 N.Y.2d 123, 651 N.Y.S.2d 954 (1996); where the firm represents entities and, by extension, individual officers or directors, *see Cooke v. Laidlaw, Adams & Peck, Inc.*, 126 A.D.2d 453, 510 N.Y.S.2d 597 (1st Dep't 1987); or where the affairs of such entities are "intertwined" and general representation provided without regard to the identify of any particular entity. *See In re Graff Marketing Corp.*, 42 B.R. 801 (Bankr. S.D.N.Y. 1984).

*Graff* (cited by Proskauer in its Objection (at p. 13) is instructive. In *Graff*, the Trustee for Debtor Graff Marketing Corp., commenced litigation against Houze Glass Company ("Houze") related to services rendered to Houze prior to filing of the bankruptcy petition. The firm of Goodkind, Wechsler & Labatan ("Goodkind Firm") appeared for Houze. Graff Marketing and Graff Group were private companies, owned by Mitchell Graff. The Goodkind Firm

represented Graff Group and other affiliated companies in 19 unrelated litigations.  Graff asserted that he considered the Goodkind Firm to be his "exclusive legal representative" with whom he consulted with regard to business and financial matters and with regard to his business and "without distinction between corporate identities."  He considered the Firm to be his "general counsel" and confided extensively with the Goodkind Firm "on numerous legal and financial matters," such that the Goodkind Firm became "totally familiar with the Graff Group's operations, and in particular, Graff Group's relationship with [Houze]."  42 B.R. at 802.  The Goodkind firm rejected the term "general counsel" and asserted that the claim for commissions in the litigation "could not involve any confidence with respect to only purely mathematical transactions between the parties."  *Id.*

The Court, in the course of its decision disqualifying the Goodkind Firm, observed that "delimiting the contours of activity that may constitute formation of [an attorney/client] relationship involves far more than identification of the entity that paid the attorney's fee."  *Id*. at 804.  The inquiry is "whether the relationship was such that the attorney was in fact engaged and as such was in a position to receive confidences from the movant."  *Id.*  The Court found there to be no question that the attorney at the Goodkind Firm acted as a lawyer and was in a position to receive confidences from Graff Marketing.  The Court further noted that neither the Firm nor the client paid attention as to whether the Firm acted on behalf of a particular entity within the Graff Marketing family (whose affairs were intertwined) and, therefore, an attorney/client relationship existed between "Graff Marketing" and the Goodkind Firm.  *Id.* at 806.

Although Movants' operations were not technically "intertwined" and the various entities had separate identities, the reasoning in *Graff* warrants a finding that Proskauer continued

to represent Movants throughout the 680 Fifth Avenue proceeding. Strasser (on his own behalf and on behalf of the entities in which he had an interest) was in almost daily contact with Proskauer during that time period in connection with Proskauer's efforts to structure what ultimately became the approved confirmation plan in such a way so as to minimize the tax impact on the limited partners.[4] Proskauer knew that this was always a significant concern for Strasser during this time period. Indeed, protection of the Limited Partners was an essential focus of Proskauer's representation, just as it is one of the essential issues in this case. Moreover, Strasser controls entities which had interests in the partners in both 680 Fifth Avenue and in this case. At the very least, there is a fact question (requiring further discovery and a hearing) as to whether Proskauer did, in fact, through its representation of the 680 Fifth Avenue partnership debtor "assume an affirmative duty" to represent the interests of the Limited Partners. *See* Objection at 11-12 (citing *Kushner v. Herman*, 215 A.D.2d 633, 628 N.Y.S.2d 123 (2d Dep't 1995) (law firm that represents partnership may assume an affirmative duty to represent the limited partners of the partnership). *Cf. Franco v. English*, 210 A.D.2d 630, 620 N.Y.S.2d 156 (3rd Dep't 1994) (attorney/client relationship between law firm and partnership gave rise to a fiduciary relationship between the Firm and general and limited partners of partnership).

Moreover, Proskauer's admitted representation of the 680 Fifth Avenue partnership during that proceeding (and constant interaction with Strasser) gives rise to an attorney/client relationship between Movant Strasser and Proskauer. *See Tekni-Plex*, *supra*,

---

[4] Jeffrey Levitan attempts mightily in his declaration to minimize the centrality of Strasser, personally, to both 680 Fifth Avenue and this matter: "Other than Strasser, I am not aware of any person or entity involved in these bankruptcy cases who was also involved in 680 Fifth Avenue." (Levitan Dec. ¶3) That sentence is a masterpiece of understatement.

(Court of Appeals recognizes that corporate representation of close corporation may be individual representation as well, and observing that record was not sufficient to make such a determination). *Compare Jamaica Pub. Serv. Co. v. AIU Ins. Co.*, 92 N.Y.2d 631, 684 N.Y.S.2d 459 (1998) (Court of Appeals "leave[s] for another day" the issue of whether attorney's "prior employment by one entity in a large corporate family was tantamount to an attorney-client relationship with other members of that family . . ."). *See also In re Blinder, Robinson & Co.*, 123 B.R. 900 (Bankr. D. Colo. 1991) (disqualifying debtor's former in-house counsel from representing one of debtor's largest creditors).[5]

In sum, an attorney/client relationship plainly existed between Movants and Proskauer.

### B. Proskauer's Admitted Representation of Movants Easily Satisfies the Substantial Relationship Test

The Movants' Application demonstrated the substantial relationship between the issues related to Proskauer's former retention and the issues in this matter. Indeed, the issues are identical. Whether the Court considers Proskauer's pre-1995 representation (a time period in which Proskauer admits to having rendered tax advice to Movants) (*see, e.g.,* Papa Aff. at ¶ 10) or in the subsequent period (during which Proskauer confided with Strasser on an almost daily basis in designing the structure and strategies for gaining approval of a plan of reorganization of a

---

[5] Even putting aside 680 Fifth Avenue, Proskauer's representation of Strasser and related entities continued into late 1997, when Proskauer (as Strasser's counsel) accompanied Strasser to a meeting with Marc Lasry (Amroc Investments), to discuss the parameters of a joint venture and Proskauer's possible role as counsel thereto which venture would seek approval of Debtors' plan of reorganization in this matter.

bankrupt estate *identical* in structure to the original debtors here and protecting the limited partners from potential tax recapture), Proskauer's current representation of First Boston involves the very same issues.

Proskauer seeks to downplay the relationship between its representation by minimizing the nature of the advice rendered to Movants. Thus, Proskauer conclusorily asserts that prior to 1992, it merely provided advice to Movants on "unrelated corporate matters" (Objection at 14). Likewise, Proskauer seeks to minimize the tax issues: "[A]ny attorney advising a limited partnership on a transaction would consider and advise the partnership on tax consequences of the deal to limited partners" (Objection at 14). However, as set forth in detail in the Application (and as Proskauer well knows), tax issues are one of the most critical (if not the most critical) component in real estate limited partnership syndications such as 680 Fifth Avenue and Madison Plaza. Indeed, it was only through this Court's hard work and assistance that the parties were able to bridge the gap and close a deal in June 1998 which resulted in an approved confirmation plan which protected the limited partners from the severe ramifications of tax recapture.[6]

A direct connection exists between Proskauer's admitted former representation of

---

[6] Proskauer glibly dismisses the significance of Movants' tax recapture concerns. *(See* Objection at 19). For the purposes of this motion, the issue as to whether the Limited Partners will as a matter of certainty be subject to tax recapture is irrelevant. It suffices that tax recapture remains a disputed issue, addressed by Proskauer both in its previous representation of Movants and in its current representation of First Boston. The adverse impact of tax recapture may be more significant now that First Boston and Macklowe have presented to the Court and to the Limited Partners their proposed settlement. The Limited Partners are currently preparing papers in opposition to the settlement showing the extent the settlement alters the protections afforded to the Limited Partners in the confirmed plan of reorganization.

Movants and the issues in this matter. In fact, Proskauer represented Strasser-controlled entities in structuring and negotiating the very mortgage purchased by Macklowe (with First Boston backing him as a co-venturer) and upon which First Boston now seeks to exercise its purported rights (Proskauer even issued the opinion letter to the partnership in connection with the deal). This was not a situation where an "innocent" lender seeks relief against a recalcitrant borrower based upon publicly-available information; First Boston obviously sought out Proskauer to take advantage of the cost savings and the wealth of confidential information exchanged between Proskauer and Strasser through Proskauer's role as Movants' former counsel on the very transaction at hand in these proceedings.

        Moreover, Proskauer suggests that Jeffrey Levitan's knowledge gleaned from <u>680 Fifth Avenue</u> is irrelevant to this proceeding since "inquiry into any of the movants' backgrounds" is not necessary here (Objection at 15). Again, Proskauer misses the point. Strasser engaged with Proskauer (and with Levitan) on an almost daily basis on the <u>680 Fifth Avenue</u> matter. He shared with Proskauer and with Levitan his innermost thoughts and confidences (and vice versa) as to how to structure a settlement so as to protect limited partners and, most significantly, so that such a settlement would be beyond attack by the mortgagee in that case. Now that Proskauer has appeared for First Boston, Proskauer can give its new client the benefit of the expertise it gained and Strasser's confidences it received regarding the mortgage in this matter which it originally negotiated for the original Debtors, and the tax concerns of the limited partners which it so successfully addressed on behalf of limited partners in <u>680 Fifth Avenue</u>. There is something inherently wrong with this dual representation, and Strasser should not be put in the unfair position of having to defend against a party which has access to these confidences which relate to

Strasser's goals, strategies and tactics on the very issues being litigated here.

Thus, there is plainly a substantial relationship between Proskauer's former representation of Movants and the issues raised (or to be raised in assessing a proposed settlement) in this matter.

### C. Proskauer Had Access to Movants' Confidences

Movants easily satisfy the final *Artek* factor to be reviewed: whether there is reason to believe that Proskauer learned any client confidences that could be used against a former client. Proskauer recognizes that once Movants satisfy the "substantial relationship" test, a presumption applies that confidences have been learned (*see* Objection at 17). However, Proskauer asserts that it may rebut that presumption.

Initially, where the tainted attorney (Proskauer here) is alleged to have been accorded access to confidential information, the presumption may be *irrebutable*. *See, e.g., Tiuman v. Canant*, 1994 WL 198690 (S.D.N.Y. 1994) ("[w]hen an attorney was personally in control of a prior representation, there is an irrebutable presumption that the attorney had access to confidential information"); *United States Football League v. National Football League*, 605 F. Supp. 1448 (S.D.N.Y. 1985) (recognizing that "it is at least a fair inference from the language of [*Cheng v. GAF Corp.*] that the Second Circuit views the presumption as generally irrebuttable").

Even if the presumption is rebuttable, Proskauer woefully fails in that regard. In fact, it appears that Proskauer confuses the issue of access to client confidences with the issue of substantial relationship. Proskauer asserts that its

> current representation . . . has no relation to any secrets or

> confidences of [its] former clients. Information exchanged between
> Proskauer and its former clients could not possibly impact the
> enforcement of the June Confirmation Order to the disadvantage of
> a former Proskauer client, or to the benefit of Proskauer or to its
> present clients . . . The tax consequences of enforcing the June
> Confirmation Order would be identical, regardless of the identity of
> the attorneys seeking its enforcement.

(Objection at 17). This significant omission is not accidental, as Proskauer knows that it possesses a plethora of confidential information conveyed by Strasser and his entities during the course of Proskauer's acting as "general counsel" over the course of thirty years.

Proskauer also asserts that Movants "have failed to provide any example of the type of information Proskauer could have learned that is in any way relevant to these proceedings." *See* Objection at 16. Again, Proskauer misses the point. First, Proskauer should review the Application, which provides a roadmap of the areas of representation provided by Proskauer during the relevant time period. Even so, courts in this Circuit do not require movants to divulge confidential information absent protections for such information. *See, e.g., Decora Inc. v. DW Wallcovering, Inc.*, 899 F. Supp. 132 (S.D.N.Y. 1995) (court held *ex parte* hearing, recognizing that "the Court has discretion to consider evidence proving either that confidences were or were not communicated in the prior representation and to do so in a manner designed to protect confidential evidence from disclosure").

In sum, the Court should apply the irrebutable presumption that Proskauer had access to confidences of Movants in its previous representation. Even if Proskauer may rebut the presumption, it has not done so here. Finally, if necessary, Movants should be afforded the opportunity to take expedited discovery and to make an *ex parte* submission to the Court of the confidences shared with Proskauer.

## II.

## Proskauer Must be Disqualified
## Under the *Per Se* Rule

Proskauer admits that it represented Strasser related to a potential litigation against David Berley, that Strasser had provided the Firm with a retainer and that, at least until Movants filed the Application with this Court,[7] neither the Firm nor Strasser had terminated the attorney/client relationship (Objection at 18). In order to avoid the harsh reality of the *per se* rule of disqualification which applies in these circumstances, Proskauer seeks to distort the standard applicable to determine whether to apply the *per se* rule and triumphantly proclaims itself the victor. Unfortunately for Proskauer, applying the correct standard warrants the Firm's disqualification.

Proskauer asserts that in the Second Circuit the *per se* rule is only applied where the attorney whose disqualification is sought is *actively suing his client, see* Objection at 18 (citing *British Airways, PLC v. Port Auth.*, 862 F. Supp. 889, 893 (E.D.N.Y. 1994) (emphasis added), and that the Firm is not "actively suing" Strasser. Proskauer mistakes a passing reference

---

[7] Movants anticipate that Proskauer will provide the Court with a copy of an April 15, 1999 letter to Strasser by which Proskauer seeks to terminate its relationship with Strasser due to the filing of the Application. This thinly-veiled effort to "create a record" for this motion is of no moment since, "for the purposes of determining whether an attorney-client relationship is a former or continuing one, a court looks to the time that the conflict arose, not the time when the motion to disqualify was brought." *Ives v. Guilford Mills, Inc.*, 3 F. Supp. 2d 191, 201 (N.D.N.Y. 1998). Even so, Proskauer did not cease representing Strasser in April 1998 as it intimates by pointing to its own inactivity on the Berley matter. The matter was simply "on hold" due to a strategic decision made by Proskauer and Strasser.

in Judge Glasser's decision for an ironclad standard. In point of fact, courts in this Circuit do not require an active lawsuit as a prerequisite to applying the *per se* rule. Instead, the rule will be applied when an attorney "concurrently represent[s] clients with adverse interests." *See, e.g.*, *In re Manshul Constr. Corp.*, 1998 WL 405039 (S.D.N.Y. 1998). *See also Chemical Bank v. Affiliated FM Ins. Co.*, *supra* (the "per se" rule pertains to situations involving the continuous, simultaneous representation of "traditional" clients).[8]

Under the circumstances, there can be no doubt that Proskauer's representation of both First Boston and Strasser implicates the *per se* rule of disqualification. It may be "unclear" to Proskauer that Strasser will sustain tax recapture, *see* Objection at 19. But the issue of tax recapture is a real issue in this matter (both to Strasser, related entities and to other Limited Partners), and Strasser should not have to depend upon the legal advice rendered by an adverse party's counsel (nor should First Boston, as Movants' adversary, have the benefit of legal advice of Strasser's former counsel). Indeed, this is precisely why the courts apply a *per se* rule in these circumstances. As noted *supra*, Proskauer cannot drop Strasser "like a hot potato, especially if it is in order to keep happy a far more lucrative client." *Chemical Bank v. Affiliated FM Ins. Co.*, *supra*.

---

[8] Although not raised by Proskauer, Movants acknowledge that the more lenient "substantial relationship" test will be applied where the Firm concurrently represents a "vicarious" client (*e.g.*, the member of a trade association) versus a more "traditional" client. There can be no dispute that Strasser is a "traditional", and not a "vicarious" client of Proskauer in regards to the Berley matter.

## CONCLUSION

For the reasons stated herein and in the Application, Proskauer should be disqualified as counsel for First Boston forthwith.

Dated: New York, New York
      May 19, 1999

                ROSS & HARDIES
                Attorneys for Movants


                By: **S/ Marshall Beil**
                      Marshall Beil (MB-0992)
                      Philip Goldstein (PG-4770)
                65 E. 55th Street
                New York, New York 10022
                (212) 418-0622